ANGELINA RAY    309604
PACEM TEMPESTATE LAW, APC
9075 ELK GROVE BLVD., STE 230
ELK GROVE, CA 95624
916.667.3262 (P)
916.896.0218 (F)
ANGELINA@PACEMTEMPEST.COM

**Attorney for Plaintiff**
**ROBERTA BARNETT**

# UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERTA BARNETT**<br><br>    **Plaintiff,**<br><br>  vs.<br><br>**CALIFORNIA DEPARTMENT OF MOTOR VEHICLES; SHEILA EVANS, and Does 1 through 25 inclusive,**<br><br>    **Defendants** | **Case No.:** 2:17-CV-01517-TLN-CKD<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES** |

COMES NOW Plaintiff, ROBERTA BARNETT, and complains of defendants, and each of them, and alleges as follows:

**PARTIES**

1. Plaintiff ROBERTA BARNETT (hereinafter referred to as "Plaintiff") is a Motor Vehicle Representative, where she has worked since September 15, 2014.

2. Defendant CALIFORNIA DEPARTMENT OF MOTOR VEHICLES is a California State Agency.  At all relevant times, Plaintiff worked at California Department of Motor Vehicles

3. At all relevant times Defendants worked for the California Department of Motor Vehicles

4. Plaintiff does not know the true names or capacities, whether individual, partners or corporate, of the defendants sued herein as Does 1 through 25, inclusive, and for that reason said defendants are sued under fictitious names and plaintiff prays leave to amend this Complaint when the true names and capacities are know.

**JURISDICTION AND VENUE**

5. This action is brought pursuant to federal questions arising under the United States Constitution, and 29 U.S.C. §701 the Rehabilitation Act of 1973. This Court may invoke pendant jurisdiction over Plaintiff's state law claims based on 28 U.S.C. § 1367. State law claims include violation of Cal. Cons. Art I §3l Civ. Code §§ 51.7, 56, et seq., 1798, et seq., FEHA, Gov. Code §§ 12900. Cal. Cons. Art I §1, Art. I § 7; Cal. Health & Safety Code §§ 123100 to obtain relief for plaintiff for discrimination in employment because of plaintiff's physical and mental condition and engaging in protected activity and for discrimination in the terms, compensation, conditions, privileges or her employment; for equal employment opportunities and violation of the Memorandum of Understanding ("MOU') existing between DMV and plaintiff's union.

6. Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within the territorial boundaries of this judicial district.

**GENERAL ALLEGATIONS**

7.  At all times herein mentioned, defendants, and each of them, were members of and engaged in a joint venture and common enterprise and acting within the course and scope of and in pursuance of said joint venture and common enterprise.

8.  At all times herein mentioned, the acts and omissions of the various defendants, and each of them, ratified, concurred in and contributed to the various acts and omissions of each and all other defendants in proximately causing the injuries and damages as herein alleged.

9.  Defendant, California Department of Motor Vehicles ("DMV"), was and is a governmental entity and subject to suit under 29 U.S.C. §701 the Rehabilitation Act of 1973 and under the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12900, et seq., in that said defendant is an employer who regularly employs five or more persons and subject to the Cal. Cons. Art. I § 31 and Civ. Code §51.7.

10.  At all times herein mentioned each of said defendants, including those defendants named herein as Does, ratified and participated in the doing of the acts hereinafter alleged to have been done by the named defendants, and furthermore; the defendants, and each of them, are the agents, servants, and employees of each of the other defendants, as well as, the agents of all defendants, and at all times herein mentioned were acting within the course and scope of said agency and employment.

11.  The unlawful employment practices complained herein occurred in Sacramento County, California.

   a.  Plaintiff was discriminated against and harassed by defendants, and each of them, on account of her physical and mental condition during her employment, beginning and ongoing.

12. Defendants and Does 1 through 50, inclusive ("Individual Defendants") were and are the agents and/or employees of defendant, DMV, and are each subject to suit under the Cal. Cons. Art I §3l Civ. Code §§ 51.7, 56, et seq., 1798, et seq., FEHA, Gov. Code §§ 12900. Cal. Cons. Art I §1, Art. I § 7; and are sued individual and in their representative capacity. At all times herein mentioned, said Individual Defendants were supervisory to plaintiff.

13. Defendants and Does, 10 through 25 inclusively, were and are employed by defendants, DMV, Does 1 through 25, inclusive, as managers, supervisors, coordinators and administrators. At all times herein mentioned, said defendants were supervisor to plaintiff.

14. Defendants and Does, 1 through 50 inclusively, willfully, wantonly, negligently, and carelessly hired, trained, supervised and controlled the California Department of Motor Vehicles and its personnel such that commencing on or about October 2014 and ongoing, plaintiff was subjected to heightened job requirements when she was known to suffer for, mental and physical disabilities observed and recorded by her superiors and which plaintiff reported to them; in particular:

15. On or about October 2014, within days of Roberta Barnett, (hereinafter "Plaintiff") beginning work at Defendant Department of Motor Vehicles (hereinafter "DMV"), the Plaintiff requested assistance with a reasonable accommodation for parking as she suffers from chronic asthma.

16. The Plaintiff's supervisor, Defendant Shelia Evans, was made aware of the Plaintiff's preexisting condition when the supervisor took the Plaintiff on a tour of the DMV facility. Plaintiff herself made the disclosure.

17. Plaintiff specifically informed Defendant Evans that she had an ongoing diagnosis of asthma. In addition, and during this same conversation, Plaintiff requested assistance with a reasonable accommodation for parking.

18. Defendant Evans informed Plaintiff that she could use a handicap parking spot, however, she needed to be placed on the parking list to have permission to use the designated space. In addition, the space would cost $20.00 per month for its use.

19. Plaintiff informed Defendant Evans that she would need reasonable accommodation and immediate use of the space, due to her illness, to which Defendant Evans informed Plaintiff there was nothing she could do.

20. Plaintiff continued to ask Defendant Evans about use of the space and further indicated in her parking application paperwork, that a reasonable accommodation was needed.

21. Plaintiff followed up with Defendant Evans on numerous occasions. Defendant Evans refused to escalate her request or provide the human resources request for reasonable accommodation documents.

22. Defendant DMV did not engage in an interactive process with Plaintiff to assess what accommodation might need to be provided, or could be provided.

23. Parking accommodations for the Department of Motor Vehicles office at which Plaintiff was assigned consists of five (5) parking lots and additional street parking. Given this it is likely that Plaintiff's request for reasonable accommodation and access to the handicap space could be accommodated.

24. The Plaintiff was adamant to find a solution especially as walking to and from her parking spot to wok was exacerbating her known health issue, asthma, and as a result she contracted bronchitis.

25. She requested reasonable parking accommodations from her Manager, Supervisor, and eventually went to the DMV's Human Resources department. Each level of management told her the same thing; the DMV would not provide accommodation, though it was clear that they could.

26. She was informed of this even though Defendant DMV never engaged in an interactive process with her, despite her numerous requests for accommodation. Moreover, management did not actively work with the Plaintiff in attaining any sort of accommodation despite the Plaintiff's efforts to do so.

27. Plaintiff's request for accommodation pursuant to disability, asthma, for parking was then disseminated to staff, to the degree that Plaintiff overheard staff commenting that she did not appear to have a disability which would allow her to seek parking assistance and or accommodation.

28. When the Plaintiff's manager and supervisor would not assist her with her disability parking accommodation inquiries, she brought her request and inquires to Human Resources.

29. Plaintiff was informed by Defendant Evans that she was upset with Plaintiff's requests, specifically when the Plaintiff reached out to Human Resources. Plaintiff is informed and believes Supervisor did not like the Plaintiff going above her to request reasonable parking accommodation.

30. Although it upset her supervisor, the Plaintiff continued to ask HR about reasonable parking accommodation as she was being denied by her Supervisor on the issue. The Plaintiff was allowed to fill out a general parking request upon starting her job, but she was

barred from filling out a formal request for reasonable parking accommodation with the DMV and the ADA by her Supervisor and the Human Resources department.

31. After each request Plaintiff made for reasonable accommodation to park, specifically this request for reasonable accommodation was made to Defendant Evans, and directly to Human Resources for Defendant Department of Motor Vehicles, shortly thereafter, within days, Plaintiff experienced adverse employment actions further outlined below, in sum, adverse employment actions include and were not limited to, reduction in training which placed plaintiff at risk for job loss, and limited Plaintiff's ability to promote, though otherwise qualified for promotion.

32. The Plaintiff was both denied training and made to retake training courses she had already completed. This was done after each request she made either to her supervisor or HR about the reasonable accommodation to park.

33. Plaintiff was denied training that would allow her to be promoted. She made specific requests for further training but was still denied.

34. Plaintiff was told that she was working too quickly and that her production needed to slow down. Again, this was done directly following her requests for reasonable accommodation to park, specifically because Defendant Evans informed Plaintiff that she did not like that Plaintiff had "gone around" her to Human Resources requesting accommodation.

35. For a period of over five (5) months, from January to May 2015, Plaintiff made requests for training, despite everyone in Plaintiff's unit being allowed to attend and sent for training which subsequently impacted her ability to be promoted within the DMV. Plaintiff is informed and believes this denial was as a result of her ongoing requests for reasonable

accommodation as a result of the close in time proximity of the denials to train and the requests for accommodation consistent with her known disability.

36. On or around June of 2015, the Plaintiff was told that her training was "stalled," as Plaintiff did not appear on the list to attend Advance Registration II training. Even though newer staff were sent to the training in question. The stalling was due to the management denying additional training or making the Plaintiff retake training course that she had already passed. Again, Plaintiff is informed and believes this is as a result of her requests for reasonable accommodation to park.

37. Plaintiff is informed and believes she was being retrained because she was difficult and that she was supposed to "just take it." Defendants had no business need to retrain Plaintiff, they only sought to do so in effort to ensure that Plaintiff would not move forward in her position. The denial of training or requiring the Plaintiff to retake training courses occurred after each request was made by the Plaintiff for reasonable parking accommodations to her manager, supervisor, or to the HR department.

38. The stalled training interfered with the Plaintiff's potential job promotion she was seeking at another DMV location.

39. When the Plaintiff's Supervisor found out about Plaintiff's interview for promotional position at another DMV location, the Supervisor told Plaintiff that she was not qualified for the position as the Plaintiff had not completed her required training. Though she was previously disallowed from attending said training.

40. Plaintiff continued to interview for the position anyway, however, when the Plaintiff returned to work after the interview the Plaintiff asked her Supervisor directly if the they had called ahead and interfered with her interview and the Supervisor said "maybe".

41. Supervisor deliberately created roadblocks to hinder Plaintiff's ability to be promoted or transferred to another DMV location by hindering Plaintiff's ability further train for her job as well as potential professional development.

42. Ultimately Plaintiff was disallowed from working at her level of experience and demoted as a result of stalled and inconsistent training that occurred as a result of multiple requests to upper management for a reasonable parking accommodation.

43. Plaintiff's counterparts were specifically told not to speak to or ask Plaintiff questions by Plaintiff's supervisor. This was done in Plaintiff's presence and again in front of all staff. Reason provided was that Plaintiff had not completed required training, despite numerous requests to be allowed to complete training.

44. Despite requesting reasonable accommodation for parking through upper management and Human Resources, an appropriate parking space was never provided to Plaintiff.

45. Each act of retaliation listed is a result of the constant refusal by the DMV to work with the Plaintiff in attaining reasonable parking accommodations acts of retaliation are outlined as follows:

    a. Plaintiff is informed and believes that her workstation and computer were tampered with in effort to make it appear as though she had made errors in her work.

    b. When Plaintiff overheard what she considered to be a derogatory remark that bordered on sexual harassment, and reported the same to management, Plaintiff was herself sent to a training on Sexual Harassment.

FIRST AMENDED COMPLAINT
- 9

    c. Plaintiff was threatened by another employee physically towered over her threatening to punch her, while calling her crazy. Defendants did nothing to reprimand or remove that employee from working with and near the Plaintiff.

    d. Plaintiff was accused of being rude and disrespectful in an effort to establish a basis for reprimand, loss of pay and potential termination. Plaintiff responded at length to each false allegation of inappropriate behavior.

    e. Plaintiff was placed facing a corner separated from staff, against her will and over her objection and disclosure that the placement would cause her additional stress and anxiety. Plaintiff was then taunted by other staff due to her placement.

    f. Plaintiff was systematically disallowed from working overtime, despite many others in her unit with her same skills and qualifications, and some with fewer skills and qualifications being allowed to do so.

46. Plaintiff eventually had to leave work on a request for workers compensation as a result of stress due to the retaliation and harassment she endured from staff and managers on a daily basis.

47. Information regarding Plaintiff's request for workers compensation was disseminated to staff. Plaintiff is informed and believes that the same was disseminated by Defendants listed herein.

48. Plaintiff applied for Family Medical Leave Act (FMLA) assistance three times between January and February 2016, each request was denied, on the basis that the Plaintiff's doctor was filling out the documentation incorrectly. Each time Plaintiff and Plaintiff's doctor completed the paperwork pursuant to DMV direction only to have the request again denied.

49. Plaintiff was ridiculed and taunted with the fear that should her FMLA run out that she would have no recourse or place to go.

50. DMV and the Individual Defendants disclosed to other employees and other members of the general public, confidential information involving plaintiff's medical condition; her care and treatment; publicly revealed orally and in writing personal and embarrassing information about plaintiff to members of the public which disclosures were negligent, malicious and reckless and without justification, in knowns violation of HIPPA privacy rules.

51. Medical disclosures were made without the knowledge or consent of Plaintiff which violated Plaintiff's privacy and confidentiality rights by Defendants and, Does 1 through 50 who willfully, wantonly, negligently , and carelessly disclosed confidential information involving Plaintiff's medical condition, her care and treatment, which disclosures were personal and embarrassing to plaintiff and was as a result of ill will, retaliation, and misconduct of DMV and its employees or agents defendant, and which subject Plaintiff to hatred, contempt or ridicule and caused her to shunned and avoided.

52. Plaintiff incorporates by reference and realleges paragraphs 1 through 16, inclusive as though set forth herein at length.

**Plaintiff's Exhaustion of Administrative Remedies**

53. Plaintiff filed EEOC complaint and received her right to sue letter. See Exhibit A attached to underlying complaint.

54. Plaintiff first filed her DFEH complaint and received a right to sue letter. See Exhibit B attached to underlying complaint.

55. Plaintiff also filed a claim pursuant to the provisions of Government Code § 910 et. Seq. See Exhibit C attached to underlying complaint.

56.     Plaintiff has exhausted her administrative remedies with respect to the filing of this civil action.

## FIRST CAUSE OF ACTION
### [Discrimination based on Disability under the Rehabilitation Act]
### [As to all Defendants]

57.     Plaintiff realleges and incorporates herein the allegations in Paragraphs 1 through 56 as set forth above

58.     Plaintiff is a member of a protected class under 29 U.S.C. §701 and under the FEHA.

59.     The unlawful conducts of Defendants violates 29 U.S.C. §701 and the California Fair Employment and Housing Act (FEHA).

60.     To establish a disability-based harassment claim, Plaintiff must prove that she belongs to a protected group, that she was subjected to unwelcome harassment, the harassment was based on Plaintiff's disability, the harassment affected a term, condition or privilege of employment, and finally, the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Flowers v. Southern Regional Physician Services Inc.* (5th Cir. 2001) 247 F3d 229, 232.

61.     The Plaintiff in this case is a part of a protected group, physically disabled due to asthma, she was qualified to be considered disabled due to her ongoing and persistent health issues, with or without reasonable accommodation.

62.     Defendant Evans and Defendant DMV knew of, and were told about Plaintiff's asthma, it was well known to Defendants and Defendants made no effort to accommodate Plaintiff or her requests, though able.

FIRST AMENDED COMPLAINT
- 12

63.     Specifically, Plaintiff's asthma makes is difficult in some cases, impossible in others, to walk long distances. In addition, the persistent asthma, can and did result in bronchitis which Plaintiff suffered during her employment with Defendant DMV.  This medical issue caused her to miss time from work due to attending doctors appointments and treating illnesses caused by the underlying asthma.

64.     Had Defendant DMV allowed for the use of the parking space as requested Plaintiff would have been able to ambulate to her workplace without additional stress on her lungs exacerbating her known asthma.

## SECOND CAUSE OF ACTION
### [Discrimination based on Disability under the Rehabilitation Act- Retaliation]
### [As to all Defendants]

65.     Plaintiff realleges and incorporates herein the allegations in Paragraphs 1 through 64 as set forth above

66.     The Plaintiff was subjected to retaliation in the form of adverse employment actions by both her co-workers, supervisors, and upper management as a result for requesting a reasonable parking accommodation.

67.     The retaliation hindered Plaintiff's ability further train for her job as well as her ability to work overtime. The failure to train placed Plaintiff at risk for job loss. In addition, Defendant Evans used the incomplete training as a basis to thwart a promotional opportunity for Plaintiff after Plaintiff had interviewed for the promotional opportunity for which she was qualified.

68.     These training denials were made within a reasonable period of time after complaints for failure to accommodate the underlying parking request were made, often within days.

69. Plaintiff's Supervisor informed Plaintiff that she was well aware of the ongoing harassment that Plaintiff was facing as Plaintiff's Supervisor was partaking in the harassing.

70. FEHA, Gov. Code. Section 12900-12966, places an obligation on the employer to make reasonable accommodations and as a result the FEHA "makes it unlawful for an employer to fail to engage in a timely, good faith, interactive process". Gov. Code, section 12940 (m)(1) (see *Moore v. Regents of University of California*, 248 Cal. App. 4th 216).

71. The Defendants did not engage in a timely, good faith, interactive process with the Plaintiff.

72. Plaintiff's Supervisor knew of the Plaintiff's disability, informed Plaintiff she knew of the disability and offered no solution to solve her employee's needs.

73. Supervisor, Defendant Evans, was even upset when Plaintiff went above her and to make the same request for reasonable parking accommodations and retaliated against the Plaintiff after each additional request was made.

74. Defendant DMV's Human Resources department also did not engage in a timely, good faith, interactive process with the Plaintiff.

75. Instead Human Resources continued to deny her request outright and brush off the Plaintiff. The Plaintiff was even denied the opportunity to fill out a formal request for reasonable parking accommodations.

76. The unlawful conducts of Defendants violates 29 U.S.C. §701 and the FEHA.

77. Plaintiff has complained of unlawful conduct towards her, but her complaints have been ignored, and some of the unlawful conduct has increased in severity.

78. Plaintiff applied for, and was blocked from promotions, and transfers to other offices for which shew as qualified.

79. Defendants each of them took adverse actions against Plaintiff because of her disability.

80. As a result of the aforementioned conduct alleged herein, Plaintiff has suffered, and continues to suffer, humiliation, anxiety, mental anguish, emotional distress and lost wages.

81. Defendants' willful and knowing discrimination, retaliation and/or harassment against Plaintiff is outrageous and beyond the scope of conduct which should be tolerated by anyone.

82. As a proximate result of Defendants' willful, intentional and malicious conduct, Plaintiff suffered and continues to suffer extreme mental and emotional distress. Plaintiff therefore is entitled to an award of general damages and punitive damages against the Defendants.

83. Plaintiff has suffered and continues to suffer irreparable and other injury as a direct and legal result of the actions of Defendants, including severe anxiety, physical ailments directly attributable to stress and other emotional trauma.

WHEREFORE, Plaintiff prays for judgment as specifically set forth below.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays judgment against defendants, and each of them as follows:

1. For back pay, front pay and other monetary damages according to proof;
2. For general damages according to proof;
3. For special damages according to proof;
4. For punitive damages according to proof;
5. For interest on the sum of damages awarded
6. For attorney fees herein incurred as allowed by law;
7. For costs as allowed by law; and
8. For such other and further relief as the Court deems property in the premises

1  Dated this September 2, 2019                     **PACEM TEMPESTATE LAW, APC**

                                                            /s/ Angelina Ray
                                          _____
                                          Angelina Ray, Attorney for ROBERTA BARNETT

FIRST AMENDED COMPLAINT
- 16